[Crim. No. 7380.  Second Dist., Div. Three.  Mar. 30, 1961.]

THE PEOPLE, Respondent, v. RICHARD LOMELI CASTRO, Appellant.

John H. Marshall for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and John F. Foran, Deputy Attorneys General, for Respondent.

SHINN, P. J.—Richard Lomeli Castro and codefendant Helen Ann Roberts were accused by an information in count I

of illegally possessing heroin and in count II of illegally possessing marijuana. Castro was also charged with a prior felony conviction of burglary. He pleaded not guilty and denied the prior felony conviction.

In a trial to the court the matter was submitted upon the transcript of the preliminary hearing, subject to the right of offering additional evidence. Appellant was represented by counsel, but did not take the stand in his defense. The court determined that he was not guilty of illegally possessing marijuana, but that he was guilty of illegally possessing heroin and of the prior conviction.

Castro gave notice of appeal from the judgment.

There was evidence of the following facts: In the evening of May 3, 1960, H. G. Virgin, a narcotic officer, received a telephone call from a woman. The caller identified herself as appellant's sister and reported that she had just come from an apartment located at 9085⅝ West Olympic Boulevard, where she had seen her brother, the appellant, placing a white powder from a bowl in some capsules. She declared that appellant had given one of the two girls who were also in the apartment a shot in the arm with a needle. When asked who the people were in the apartment she replied that one was a redheaded girl, whose name she did not know, and the other a girl nicknamed "Doggie." She identified her brother as Richard Castro, otherwise known as "Lucky." The caller said that she believed Doggie's name was Helen Roberts.

Officer Virgin testified that at the time he received the telephone call he knew the appellant by the nickname of "Lucky" and he had "knowledge" that he had been selling narcotics in pretty good-sized quantities for a period of approximately three, four or five months.

The officer, with two of his partners, proceeded to the Olympic Boulevard address and parked their vehicle across the street in a vacant gas station. As Virgin got out of the vehicle he observed appellant and a redheaded woman leaving the aforementioned address. They entered a brown-colored Oldsmobile and drove east on Olympic. The officers knocked on the apartment door and said, "Open up, 'Doggie.'" The officers forced their way in and searched the apartment. They found narcotic paraphernalia that is used in both dispensing and injecting heroin. In addition they found two gelatin capsules and a hypodermic syringe containing heroin. They also found two manila bags, later shown to contain marijuana, hidden in a console type of radio.

Following the search codefendant Roberts told the police that the "stuff" was not hers, but that it belonged to "Lucky," who had been at her "pad" just prior to their arrival, and that he had capped up a gram of the "stuff"; that the two capsules were left over and that he had gone out to "score." While the officers were in the apartment a series of approximately 10 telephone calls came in. The callers all asked for "Lucky" or Richard Castro. They were not from the same person, but from five to seven different persons.

Officer Virgin left the apartment and as he was standing on the sidewalk outside the apartment he observed the brown-colored Oldsmobile which he had seen drive away earlier. Virgin saw appellant get out of the driver's side, walk around to the passenger side and start to open the door. At that point appellant looked toward the house and at the officer, whereupon appellant walked to the front of the car, got in and drove off rapidly. The officer pursued appellant and observed him some blocks away inside a telephone booth. The officer told appellant what he had found back at the "pad" and stated that he wanted him to return to the apartment.

Upon arriving at the apartment, appellant was taken to the bedroom and asked to empty his pocket. He complied and it was ascertained that he had $50 or $60 in cash. Appellant explained that he had been out trying to raise money to "score," and that he wanted to "score" about a "half piece." He stated that he had been in the "pad" earlier, and that the phone calls must have been from his "connection."

Virgin testified that the word "connection" has a particular significance in the realm of narcotics and it is commonly used to designate a person who sells narcotics. He testified that the word "score" is used to mean "to buy."

The codefendant took the stand and testified in her own defense. She stated that appellant had been keeping company with her roommate and had been coming to the apartment almost every day for a week prior to the time of her arrest. She stated that appellant was capping heroin in her apartment and that she was aware that he was doing it; that the heroin belonged to appellant and that he had capped quite a few "pieces" prior to his leaving the apartment on the day of his arrest. She testified that appellant had given her heroin the night of her arrest and that she had "fixed herself." She further stated that at the time of her arraignment the appellant whispered to her that she had better not take the stand

against him. She also testified that while she was in jail he deposited money for her with the authorities.

Appellant's only point on appeal is that the evidence was insufficient to support the judgment of conviction for the reason that the testimony of the accomplice was not sufficiently corroborated.

■ Evidence necessary to corroborate testimony of an accomplice must create more than a suspicion of guilt, but may be sufficient, even though it is slight and, when standing alone, entitled to but little consideration. (*People* v. *Walters,* 165 Cal.App.2d 326, 328 [331 P.2d 1037].)

■ We are of the opinion that in the instant case the evidence was sufficient to corroborate the testimony of appellant's codefendant. The fact that appellant admitted that he had been in the apartment just before the police arrived, coupled with the fact that two capsules of heroin and narcotics paraphernalia used to inject and dispense heroin were found in the apartment, strongly tended to connect appellant with the crime. Moreover, the facts that the police were aware that appellant had been selling narcotics for the past several months; that while the police were in the apartment many phone calls came in for "Lucky" which appellant stated were probably from his "connection"; that appellant upon looking in the direction of the officer turned around, got into his car and drove rapidly away; that he was carrying $50 to $60 in cash; that the language of appellant was the type used by people in narcotics traffic; that he was accused of telling the codefendant not to testify against him and that he failed to testify in his own defense, either to deny or explain the accusations and evidence against him, clearly constituted independent evidence sufficient to convince the trier of fact that the corroboratee was telling the truth.

The judgment is affirmed.

Vallée, J., and Ford, J., concurred.